SANGER *v.* McDONALD.

Opinion delivered July 13, 1908.

1. WILL—FRAUD OR UNDUE INFLUENCE.—The fraud or undue influence which will avoid a will is not the legitimate influence which springs from natural affection; undue influence consists in virtually substituting the will of the person exercising it for that of the testator, while fraud consists in making that which is false appear to the testator to be true. (Page 157.)

2. SAME—PROCUREMENT BY FRAUD—RANGE OF EVIDENCE.—Where the procurement of a will by fraud or undue influence is alleged, the evidence, whether direct or circumstantial, should be permitted to take a very wide range; it being admissible to show the nature of the relations and dealings between the testator and the beneficiaries, the amount of the testator's property, his social and commercial standing, the situation and mental condition of the testator, the nature and contents of the will and all the circumstances under which it was executed. (Page 157.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; reversed.

### STATEMENT BY THE COURT.

This is an issue of *devisavit vel non* from the circuit court of Howard County. The case has been here before, and is reported in 82 Ark. 432 (*Sanger* v. *McDonald*). In its opinion then, the court expressly declined to consider any of the numerous assignments of error except that upon which the reversal was based, viz., error in permitting one of the attorneys for

contestants in his closing argument to allude to the fact that one of the attorneys for the contestees, who had prepared the will, had not testified, and to comment on this omission as a circumstance to be considered as against the contestees. The court having taken this view of the former appeal, the case may be said to be here now as if for the first time.

The will in controversy· was executed by Mrs. Mary J. Johnson on the 26th day of November, 1906, and is attacked on the ground of fraud and undue influence. The proponents of the will are Will Sanger, Laura Sanger, Blanche Withrow (born Sanger), Libbie Sanger and George P. Sanger, children and heirs at law of the said Mary J. Johnson. The contestants are Mollie E. McDonald and Lula Wolff, also the children and heirs at law of Mary J. Johnson.

The will is as follows: "I Mary. J. Johnson, of Nashville, Arkansas, being of sound and disposing mind and memory, · do make and publish this my last will and testament, hereby revoking all other wills and codicils.

"First. I direct that all my lawful and just debts be paid out of my estate.

"Second. I give, devise and bequeath to my son, George P. Sanger, ten dollars.

"Third. I give, devise and bequeath to my daughter, Lula Wolff, seventy-five feet off of the east end of the north half of block No. 281 in the city of Little Rock, Arkansas.

"Fourth. I give, devise and ·bequeath to my daughter, Mollie E. McDonald, seventy-five feet off of the west end of the north half of block No. 281, in the city of Little Rock, Arkansas.

"Fifth. I give, devise and bequeath to my daughters, Libbie, Laura and Blanche Sanger, the home place on which I now live in the town of Nashville, Arkansas, together with all the furniture and household goods in the said house in which I now live.

"Sixth. I give, devise and bequeath to my children, Will Sanger, Libbie Sanger, Blanche Sanger and Laura Sanger, all the residue and remainder of my property, real, personal and mixed, wheresoever situated.

"And, fully understanding and comprehending all the pro-

visions and effect of this will and being fully satisfied therewith, I do now execute and publish the same, and in the presence of the witnesses W. C. Rodgers and J. S. Corn I do declare to them that this is my last will and testament by me freely made and fully understood.

"In testimony whereof I do now sign and execute the same, this 26th day of November, A. D., 1906.

"MARY J. JOHNSON.

"We, W. C. Rodgers and J. S. Corn, witnesses, do hereby certify that the above and foregoing will was executed by the testatrix in our presence, and that at the time of the execution thereof she declared to us that the above was and is her last will and testament, and requested that we attest the same as witnesses, which we now do this 26th day of November, A. D. 1906.

"W. C. RODGERS, *Witness.*

"J. S. CORN, *Witness.*"

The following agreed statement of facts was read to the jury: "It is admitted by the contestants that the will was executed in proper form, and that at the time of the execution thereof the testatrix was competent to make the will; that the will was executed legally, and the testatrix was mentally able to make the will and was of sound and disposing mind."

The will in question was executed under the following circumstances: Mrs. Mary J. Johnson was a widow residing in Nashville, Arkansas. She was 66 years old, and was afflicted with uterine cancer. She was advised by her physicians that the only hope of prolonging her life was an operation, and that the operation would be an extremely dangerous one. Will Sanger, an unmarried son and her three unmarried daughters, Libbie, Laura and Blanche Sanger, all children by her first husband, resided with her, and had done so all their lives. Her two married daughters, the contestants, who had been advised of her critical condition, had left their homes in Little Rock and had come to her bedside. The will was executed on November the 26th. The operation was performed on the 2d day of December, and she died on the following day.

Mollie E. McDonald, a married daughter and one of the contestants, testified substantially as follows:

"I live in Little Rock, and have been married 21 years. My mother lived in Little Rock two or three years after my marriage. She then moved to Mineral Springs, and later to Nashville, Ark. I was with my mother about a week during her last sickness. I was not with her when she died. I had left about two days previously. Mother was very weak when she executed the will in controversy. I had been advised of her condition by my brother, Will Sanger, and had come to see her in response to a telegram sent me by her. There were only four of us present when mother signed the will, viz.: W. C. Rodgers, who drew the will, my brother Will, Dr. Corn, her attending physician, and myself. The first intimation I had that a will was to be executed was one morning before breakfast when my brother Will called to us. He told sister Lula and myself, as mother was growing weaker, he thought best to make her will. He said he thought $1000 each would be an equal share of mother's property, and said that everything she had was heavily incumbered, even to the home place. I began to ask him about the property. He didn't tell me all, only said that there was one piece of property not incumbered. I told him that I would rather have property than money. He said that he would give us 100 feet off of block 281 in Little Rock. He told me that this was the only property mother owned that was not heavily incumbered. He studied awhile, went out and had a conversation with Dr. Corn, and when he came back said he couldn't give us 100 feet, but would give us 75 feet. He said the property was valuable. I told him that I would not take 75 feet, and asked him by what right he was going to make mother's will anyway. He said that he was doing it to cut George Sanger out because he had already received his part. I then said I am going in and tell Mamma what you are trying to do. He said: 'Before I would have you go in and broach Mamma on this subject, I would have my right arm cut off.' I didn't go in to see Mamma. When Mr. Rodgers came, Willie handed him the data for the will. I don't know where he had gotten it. Mr. Rodgers handed Mamma the will, and she only read one or two lines, and she got so weak she couldn't read. She handed it back to Mr. Rodgers, and he read it to her, and then she signed it. The re-

lations between mother and myself were always friendly. I was at mother's bedside about four days before the will was signed."

Mrs. Lula Wolff testified that she was a daughter of Mrs. Johnson and resided at Bingen, Ark. That she was married 13 years ago. She and Charlie McDonald, a son of Mrs. Mollie McDonald, testified that they heard the conversation between Mollie McDonald and Will Sanger on the morning the will was executed. In the main they corroborated the testimony of Mrs. McDonald.

Will Sanger testified as follows: "I am 40 years old. I have lived with my mother all my life. I am not married. Those who constituted the family of my mother at the time of her death, and who lived at the home place, were her unmarried daughters, Libbie, Laura and Blanche, and myself. Mother and I supported the family. Her sources of income were limited. Her average net income was about $200 per year. I contributed the remainder of the money which was required to support the family. I had been at work for wages for about 15 years prior to her death. I did not save anything, but contributed my earnings to the support of the family. On the morning the will was executed, I went in and Mamma told me that she had requested Dr. Corn to bring Mr. Rodgers down to write her will, and that she had put it off as long as she was going to. She said: 'Willie, I want you to go and see what Mollie and Lula (meaning the contestants) are expecting.' I went to the room where they were and said: "Mollie, Mamma is sending me out to see what you and Lula are expecting. She is going to make her will, and has sent Dr. Corn after Mr. Rodgers.' Mollie spoke up, and said, 'I want two lots of the half of block 281 in Little Rock.' I went into Mamma's room and told her that Mollie wanted two lots. She said: 'I can't do that.' Mrs. Ben. Smith was in the room at the time. I went out, and told Mollie that Mamma said that she could not give her two lots; that that was too much. Mollie then asked me if Mamma had sold any of the property that was inherited from Aunt Julia, and I told her no. She then asked me about the Texas land. I told her about it, and said that the sheriff of the county where it was situated said it was worth $1500. She then asked about the black land farm, and I told her that

Mamma had given it to me. She then asked about the Stifft property. I told her that it was mortgaged for $2250. I told her there was a mortgage on the home place, but that there was not much due on it. I told her that there was no mortgage on block 281. She then said she would be satisfied with a lot and one-half off the corner of block 281. I then went and told Mamma that Mollie had requested a lot and one-half, and that if she would give her that she would be satisfied. Mother then said "I intended to give her a lot," but said she would give her a lot and one-half. She then told me to put down ten dollars for brother George, for he has already had his part. She said: 'I want the home place for the girls. I don't want to leave them without a shelter . [meaning Laura, Libbie and Blanche].' She told me to put the other property down for them and myself. I put it down as she dictated, handed the data to Mr. Rodgers, and from it he drew the will."

The unmarried daughters testified that they heard the conversation between Mrs. McDonald and Will Sanger about the provisions of the will, and their testimony is substantially the same on that point as that of Will Sanger.

Dr. Corn testified that he was the family physician of Mrs. Johnson. That Mrs. Johnson worried about her business and wanted to get it fixed up. That she spoke to him several times about it early in the morning of the day on which the will was executed. She requested him to send Mr. Rodgers to her to prepare her will. That Mrs. Ben Smith was the only other person in the room at the time. That he complied with her request.

Mrs. Ben. Smith testified that she had been assisting in taking care of Mrs. Johnson for 38 days prior to her death. That she was in the room all the morning on the day the will was executed. That she heard the conversation between Dr. Corn and Mrs. Johnson, and also the conversation between Will Sanger and his mother a little later on the same morning. She said no one else was present, and gave the same version of the conversation as those given by Dr. Corn and Will Sanger.

A detailed statement of the property owned by Mrs. Johnson and its value is set out in the former opinion in the case. The

testimony on the second trial was substantially the same on that point.

There was a jury trial and a verdict for contestants, and judgment was rendered accordingly.

The case is brought here by appeal.

*W. C. Rodgers, W. P. Feazel, Ratcliffe & Fletcher, W. S. Eakin* and *J. D. Conway* for appellants.

1. The agreed statement as to the execution of the will legally and in proper form, and as to the testatrix's competency and mental capacity to make the will, introduced in evidence, made out a clear *prima facie* case for the proponents of the will, and contradicts all allegations in the pleadings of the contestants except that of fraud. The burden of showing fraud rests upon the party alleging it. It will not be inferred from an act which does not necessarily import it. It is never presumed, but must be proved, and circumstances of mere suspicion, leading to no certain results, are not sufficient to prove it. 38 Ark. 419; 63 Ark. 16; 135 Pa. St. 434; 7 Ired. (N. C.) 341; 23 W. Va. 370; 119 Ala. 312; 33 Kan. 504; 75 Wis. 595; 75 Ia. 513; 11 Wash. 550; 11 Ark. 378. The verdict is not sustained by the evidence. A mere scintilla of evidence is not sufficient. There must be some real and substantial evidence to uphold a verdict. 84 Ark. 146; *Id.* 412.

The allegation that Will Sanger undertook to advise the appellees as to the value or extent of the property is not supported by the testimony. 84 Ark. 323. There is no evidence in the record that Dr. Corn knew what property Mrs. Johnson had, nor any reason why Mrs. McDonald should place any faith in a claim, if made, that he had seen the Little Rock property, and that it was valuable. She had no right to rely on any such representation. 7 Ark. 166; 30 Ark. 362; 47 Ark. 148. That the execution of the will was voluntary on Mrs. Johnson's part, and that she was uninfluenced by Will Sanger in the disposition of her property, is established by disinterested witnesses whose testimony stands unimpeached. The jury were not at liberty to disregard such testimony. 53 Ark. 96; 62 Ark. 182; 66 Ark. 248; 66 Ark. 439; 67 Ark. 514; 82 Ark. 267; 84 Ark. 368. So far from defrauding appellees, Sanger was the means of their receiving

more under the will than testatrix originally intended for them.

2. The validity of a will in no wise depends on whether or not the devisees would have acquiesced in its provisions if they had known of the value and extent of the property to be devised. The testator, and not the devisees, is the sole person to be satisfied with the will. 54 Ark. 588; 61 Ark. 141; 64 Ark. 322; 65 Ark. 64; 72 Ark. 440; 75 Ark. 263; 76 Ark. 224; 29 Ark. 151.

3. The relation of parent and child is no evidence of fraud or undue influence. That a child who has been favored by a will was the business agent of the testator, and by kindness and affection had acquired an influence over the parent, is not even a suspicion of fraud. Undue influence must not only be such as to destroy free agency at the time of the will, and be exercised in connection with the act, but its existence must be shown, and that it was exercised must be affirmatively proved. 83 Mo. 175; 61 Mo. 295; 9 Md. 540; 118 U. S. 127; 28 Me. 115; 38 Ala. 131; 87 Ala. 685; 95 Ala. 475; 1 Hagg. Ecc. 577; 23 Pa. St. 375; 43 Id. 46; 127 Id. 564; 39 Minn. 204; 30 Neb. 424; 75 Ill. 260; 145 Id. 405; 2 J. J. Marsh. (Ky.) 341; 28 Minn. 9; 117 Cal. 288. The law presumes that there was no undue influence, and this presumption obtains until overcome by proof. Cases supra. Where the testator has the testamentary capacity, it is not for the courts to inquire into the disposition the will makes of the estate, nor to pass upon its wisdom and fairness, 195 Pa. St. 282; 22 N. J. L. 117; 48 N. J. Eq. 566; 95 Cal. 33; 45 N. J. Eq. 726.

*David B. Sain, Hal. L. Norwood, J. S. Lake* and *Scott & Head,* for appellees.

1. There being evidence to go to the jury upon the propositions of fraud and undue influence, their verdict will not be disturbed. 19 Ark. 533; 13 Ark. 474. Upon the question as to who sent for the attorney to draw the will, see 29 Ark. 151. The relationship existing between Will Sanger and the contestants was such as in law to constitute "confidential relationship," so far as relates to property. 38 Ark. 428; 40 Ark. 28.

2. The will is the result of both fraud and undue influence exercised upon testatrix before and at the time of the execution

of the will. That fraud is not presumed, but must be proved, is conceded; but appellees have proved both fraud and undue influence to the satisfaction of the jury, and their verdict should stand. On the question of fraud and undue influence such as will invalidate a will: I Underhill on Wills, § § 125, 135, 151, 152, 161, 164; I Jarman on Wills, (Ed. 1880) 135; 25 Am. Dec. 282; 71 Ark. 305; 28 S. W. 56; 47 Miss. 313; 126 N. Y. 423; 171 Mass. 474; 153 Mo. 223; 119 Ala. 641. Under the allegation of fraud and undue influence in obtaining a will, it is competent to show that the party who is alleged to have exercised that influence was officious in having the will drawn and obtaining counsel or preparing the data therefor. I Jarman on Wills, 67-68; 1 Underhill on Wills, § § 137, 145; 29 Am. & Eng. Enc. of L., (2d Ed.), 114; Id. 115, note; 4 Redf. (N. Y.) 441; 49 Cent. Dig. col. 468 et seq., 511 et seq.; 19 Ark. 533, 550. It is competent to introduce testimony tending to show the physical condition of the testator for the purpose of showing fraud, incapacity or undue influence. I Underhill on Wills, § 138. Evidence is also admissible of the relations existing between the testator and relatives. 29 Am. & Eng. Enc. of L., (2d. Ed.), 116; 29 Ark. 151. "The court will look at the circumstances under which the devisor made his will, as the state of his property, of his family and the like." 3 Jarman on Wills, 705-6. See, also, Id. 137, note; Id. 142, note; I Underhill on Wills, § 132.

3. While declarations of the testator are not competent evidence for the purpose of contradicting the will, and are not direct evidence of coercion or fraud or undue influence, yet upon the issue of undue influence and fraud they may be given in evidence, and especially are they admissible for the purpose of showing the intentions, feelings and affections of the testator. I Underhill on Wills, § 161; 21 N. E. 111; 29 Ark. 151, 163; 29 Am. & Eng. Enc. of L. (2d Ed.), 118; 35 L. R. A. 102; 12 So. 803; Smith on Law of Fraud, § 192; 3 Wigmore on Ev. § § 1734, 1735, 1736.

HART, J., (after stating the facts). The testamentary capacity of the testatrix is admitted, and the sole ground upon which the probate of the will was contested is that of fraud and undue influence alleged to have been exercised by the appel-

lant, Will Sanger, upon the testatrix, his mother, in the execution of the will.

The proponents of the will insist that there was not sufficient evidence upon which to submit to the jury the question of fraud and undue influence. This issue, together with numerous other assignments of errors, was presented to the court for its consideration on the former appeal of this case, but the court expressly declined to consider any of them except the one upon which was based the reversal of the case.

Therefore the issue of the sufficiency of the testimony to support the verdict confronts us at the threshold of the case.

In the case of *McCulloch* v. *Campbell,* 49 Ark. 367, in discussing the question of fraud and undue influence in procuring the execution of a will, the court said: "As we understand the rule, the fraud or undue influence, which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which springs from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution."

"Fraud in the inducement consists of wilfully false statements of fact which are intended to and do induce the testator to execute the instrument, which he does execute with full knowledge of its nature and contents. Where fraud is in the inducement, as distinct from the execution, the same considerations apply to the validity of a will obtained thereby as to a will executed under a mistake of fact." Page on Wills, § 124.

"The question whether the will was procured by undue influence is, in the last analysis, a question of fact to be determined by the jury. It must be shown to their satisfaction on all the facts in evidence that, first, fraud or undue influence was practiced; second, that either, or both, in conjunction, resulted in producing the will. Hence the question of undue

influence may be viewed from the double aspect suggested by those two classes of facts which are to be proved." 1 Underhill, Wills, p. 126.

"Undue influence upon a testator consists in substituting virtually the will of the person exercising it for that of the testator. Fraud upon the testator consists in making that which is false appear to him to be true, and so affecting his will." 1 Big. on Fraud, p. 571.

"In all cases where the procurement of a will by undue influence or fraud is alleged, the evidence, whether direct or circumstantial, should be permitted to take a very wide range. The nature of the relations and dealings between the testator and the beneficiaries, the extent of the property of the testator, his social and commercial standing, his family connections, the claims of particular persons upon his bounty, the situation of the beneficiaries, social and pecuniary, the situation and mental condition of the testator, the nature and the contents of the will itself, and all the circumstances under which it was executed, may be considered as facts from which fraud and undue influence may be inferred, or by which they may be disproved." 1 Underhill on Wills, § 132, pp. 188-189 .

This rule of evidence was recognized and approved in the case of *Tobin* v. *Jenkins,* 29 Ark. 151. It has been followed by this court ever since.

Tested by these general principles as applied to the facts of this case, the court is of the opinion that the evidence does not establish fraud or undue influence.

Counsel for appellees contend that the evidence shows that the testatrix had determined to make her will in accordance with the wishes of her children, and that, pursuant to this desire on her part, her son, Will Sanger, undertook to agree with his sisters on the terms of the will and to report that agreement to her. We do not think the evidence establishes this. The undisputed testimony is that early in the morning of the day on which the will was executed, Mrs. Johnson told Dr. Corn, her attending physician, that she wanted to make her will. That she wanted him to bring down Mr. Rodgers to prepare the will. That she had tried to get her son Will to attend to it, but that he had put her off, thinking it

might worry her. This shows that the idea of making a will of some sort originated in her own brain, and the testimony shows that the idea culminated in action in anticipation of the probable fatal results of the surgical operation to be performed upon her. Mrs. Ben. Smith was in the room with her all the morning, and heard her conversation with Dr. Corn. She heard the conversation with Will Sanger later in the morning in regard to what she intended to give her two married daughters. She said that Will told his mother that Mollie wanted two lots, and that his mother replied: "Willie, I can't do that;" and that Willie then went out.

Mrs. Smith was a disinterested witness, unimpeached and uncontradicted, and her testimony was not weakened by cross-examination.

Will Sanger's testimony was to the same effect on this, the turning point of the case, and there is no contradiction, direct or indirect of this testimony. Without contradiction of this testimony, there is no evidence that any fraudulent representations of Will Sanger to his sisters was a factor in the making of the will. The undisputed evidence shows that the statements made by Will Sanger to Mrs. McDonald as testified to by her, in regard to the condition of his mother's property, were never communicated to his mother, and did not influence her in making her will

The facts and circumstances adduced in evidence do not disclose that Mrs. Johnson signed the will because she believed that its provisions were approved by Mrs. McDonald, but they do establish the fact that the wishes of Mrs. McDonald did not control her; for without any suggestions from any source she refused to accede to the terms proposed by her daughter. The will was written by a reputable attorney of the testatrix's own selection, and was witnessed by him and her attending physician. The provisions of the will were reasonable and natural, considering the fact that the most of her property was incumbered; that her married daughters were already comfortably provided for; and that her son had always lived with her, and for a great number of years had assisted her in the management of her business and in the support of his three unmarried sisters. Her partiality in giving them the larger share of her

estate might well be expected under the circumstances. The court considers the provisions of the will only as showing the reasonableness of the uncontradicted testimony of the testatrix's intentions towards her minor daughters.

While she was weak from her physical ailment, the mind of the testatrix was unimpaired. This is admitted to be true, and is evidenced by the fact that learned physicians consulted with her about performing a dangerous surgical operation upon her. She evidently knew the condition of her property; for she had always been actively engaged in the managment of it, even to the extent of supervision after she became too ill to leave her room.

The facts are not only consistent with an uninfluenced exertion of the free will of the testatrix, but afford no inference that the will was procured by false statements to her that the will had been agreed upon by or was satisfactory to the children. Wills are rarely ever satisfactory to the family or friends of the testator. But a careful examination of the testimony leads us to the conclusion that there was not sufficient evidence upon which to submit the issue of fraud and undue influence to the jury.

The case has been twice tried before a jury, and we may assume that all the testimony has been procured that would shed any light upon the question.

The cause is therefore reversed and remanded with directions to dismiss.