CREIGHTON et al. v. CREIGHTON et al.

(Circuit Court of Appeals, Eighth Circuit. October 20, 1919.)

No. 5358.

1. WILLS ☞155(1)—WHAT CONSTITUTES "UNDUE INFLUENCE."
   To constitute "undue influence," which will invalidate a will, the testator must be so influenced by persuasion, pressure, or fraudulent contrivance as to destroy his free agency, so that he does not act intelligently and voluntarily, but is subject to the will and purpose of another.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Undue Influence.]

2. WILLS ☞155(4)—INFLUENCE WHICH IS NOT UNDUE.
   Influence gained by kindness and affection will not be regarded as undue, if no imposition or fraud be practiced on the testator, and if his disposition of his property is voluntarily made.

3. WILLS ☞166(1)—EVIDENCE INSUFFICIENT TO SHOW UNDUE INFLUENCE.
   Evidence held not to establish undue influence, which invalidated will.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by Minnie B. Creighton and another against Margaret Creighton and others. Decree for complainants, and defendants appeal. Reversed.

Thad B. Landon, of Kansas City, Mo. (Adrian F. Sherman, of Kansas City, Mo., and J. R. Hyland, of Washington, Kan., on the brief), for appellants.

Edgar Bennett, of Washington, Kan., for appellees.

Before SANBORN, Circuit Judge, and MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. James Creighton, of Washington county, Kan., died January 19, 1916, leaving surviving him his widow, Margaret Creighton, and three children by her, Cyrus Creighton, Margaret Barley, and Alexander Creighton, and two children by a former marriage, Minnie Creighton and Laura A. Owen. This suit was brought by the two children by the former marriage, residents of New Mexico, against the widow and her three children, to annul an instrument purporting to be the last will and testament of James Creighton. It was alleged in the bill of complaint that, at the time of making the will in question, the testator was of unsound mind, and that he was induced to sign it through undue influence of his wife, Margaret Creighton.

These two questions were submitted to a jury, who found, from the testimony and under the instructions of the court, that James Creighton was of sound mind at the time he made the will, but that the will was made through the undue influence of his wife. Upon that verdict a decree was entered setting aside the will. The appellants contend that the evidence is not sufficient to sustain the finding of the jury, nor the decree based thereon.

Beatrice, the mother of appellees, obtained a divorce from her husband, James Creighton, April 9, 1884. There was decreed to her as alimony 160 acres of land and $1,500 in money. The custody and control of the children by that marriage were by the terms of the decree left to the father and mother as the children might choose. There were three children at that time. In November, 1884, James Creighton married appellant, Margaret Creighton. Not long after this marriage, all three of the children by the first wife took up their permanent abode with their mother. Later the mother and the three children moved to New Mexico.

James Creighton made a will on June 17, 1905, in which each of the appellees, Minnie B. Creighton and Laura A. Owen, were given $1 each, and the daughter, Lucy, by the former wife, was given $100. Later Lucy died. On the 12th of June, 1912, James Creighton, after a visit by him and Margaret Creighton to appellees in New Mexico, made a will in which he gave one-half of his property to his wife, and, after making a bequest of $400 to one Beatrice Hamilton, gave the remainder of his property in equal parts to his five children then living. On September 3, 1912, he made the will now in controversy,

which is the same as the will of June 17, 1905, except that it gives to each of the appellees the sum of $1,000 and leaves out the bequest of $100 to Lucy.

There is no direct testimony that James Creighton was unduly influenced. The jury must have based their finding on inference. It was clearly shown by the testimony that the wife did have an influence on her husband, that he had an irascible disposition, and that she could mollify him in his fits of temper. One of the witnesses for the contestants testified as follows:

"I considered Mrs. Creighton very kind to the old gentleman. Sometimes he was a little cranky, got a little off his base, as I called it, and she would look up into his face and smile, and it was all over with the old man. It just seemed as if that smile and that hand on his shoulder just took the savage all out of the old gentleman."

Another witness for contestants testified as follows:

"Q. Describe her treatment of the old gentleman to the jury. A. She was very kind to the old gentleman; treated him nice.

"Q. How did she express her kindness? A. In a general, kindly way, being good to him and seeing nothing crossed the old gentleman and irritated him.

"Q. If anything did cross him or irritate him, what did she do? How did she get him out of it? A. She would be nice to him.

"Q. How would she be nice to him? What would she do? A. When they had the trouble out there, the lady came out and took him to the house.

"Q. What do you mean by taking him to the house? A. She put her arm around him and said, 'Come on, Father; don't bother about this.'

"Q. Put her arm around his neck? A. Yes, sir.

"Q. Did you see her do that more than once? A. Did I see her do it more than once? I did see her do it once."

[1] "To constitute undue influence, the testator must be so influenced by persuasion, pressure, or fraudulent contrivance that he does not act intelligently or voluntarily, and is subject to the will and purpose of another. It may be exerted through threats, fraud, importunity, or the silent, resistless power which the strong often exercise over the weak or infirm. It must be sufficient to destroy his free agency, and substitute the will of another for that of the testator. Entreaty, importunity, or persuasion may be employed, as may appeal to the memory of past kindnesses and calls of the distressed. Mere suggestions or advice addressed to the understanding or judgment of the testator never constitute undue influence; neither does solicitation, unless the testator is so worn out with importunities that his will gives way." In re Tyner, 97 Minn. 181, 106 N. W. 898.

"The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property." McCulloch v. Campbell, 49 Ark. 367, 5 S. W. 590; Sanger v. McDonald, 87 Ark. 148, 157, 112 S. W. 365.

[2] "Influence gained by kindness and affection will not be regarded as 'undue,' if no imposition or fraud be practiced, even though it induced the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and

ministered to his wants, if such disposition is voluntarily made." Mackall v. Mackall, 135 U. S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84.

[3] Testimony was introduced to the effect that James Creighton criticized his son Cyrus for building a barn that the father considered was unnecessarily expensive. It was shown, however, that the barn was afterwards completed, and that the expense of construction was paid by the father. This incident is taken by counsel for contestants as indicating an estrangement between the father and son. If this alleged difference had come about because the son was wayward, improvident, indolent, or careless, there might be some ground for such an inference; but the evidence is that the son was industrious, capable, intelligent, and dependable. It appears from the testimony that the son, through the training he had received at the University of Kansas, had ideas that were somewhat different from those entertained by his father. Those ideas do not appear to discredit the son. On the other hand, they appear to have been to his credit, and that the father, under a grumbling and fault-finding exterior, was really proud of his son's initiative, industry, and efficiency. The testimony clearly shows that at the time of the making of the will he was in good health and spirits. No inference of undue influence on the part of Margaret Creighton can be drawn, except by a strained and unnatural construction of the testimony. All the testimony tends to show that she was kind, considerate, dutiful, and patient. The substance of the contention of appellees is that this conduct on her part was due solely to craft and cunning. The testimony does not warrant such an inference, nor does it sustain the finding that the will of September 3, 1912, was made through undue influence on her part.

This case will therefore be reversed, with directions to dismiss the bill.