(No. 16330.—Reversed and remanded.)

JULIA SEAVEY *et al.* Appellants, *vs.* LENA GLASS, Appellee.

*Opinion filed February 17, 1925.*

1. WILLS—*when the presumption of undue influence arises—instruction.* Where the testatrix for several months prior to and at the time of the execution of her will was sick, feeble and dependent on a person previously unknown to her, who lived with and cared for her, and said person procures her own attorney to draw the testatrix's will, has her own friends witness it and is made the chief beneficiary therein, a presumption arises that the will was the result of the undue influence of said beneficiary, and it is error to instruct the jury in a contest case that they should not presume the exercise of any undue influence.

2. SAME—*what constitutes mental capacity to make a will—instruction.* To have sufficient mental capacity to make a will a testator or testatrix must know who are his or her heirs, the extent of property owned and in what manner it is desired to dispose of it, but a want of any one of these elements will constitute a want of testamentary capacity; and it is error to instruct the jury in a contest case that unless the jury believe the testatrix did not know "who her legal heirs were, and what property she possessed and in what manner she wished to dispose of it," they should find her mentally competent to make a will.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

ALBERT L. HALL, and MINARD E. HULSE, for appellants.

R. W. CHURCHILL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Mrs. Lucinda Brown, a resident of Grays Lake, in Lake county, where she had lived about twenty years, suffered a stroke of paralysis on December 4, 1922, and died on

July 1, 1923. Her heirs were three nieces, who lived in Florida. She owned a house and lot in Grays Lake, several thousand dollars in bonds and had some money in the bank. She left a will executed on February 6, 1923, which was probated, by which she gave all the residue of her property after the payment of her debts and funeral expenses, and a legacy of five dollars to each of her nieces, to Lena Glass, who was nominated as executrix. Her heirs contested her will by a bill in chancery, and upon a verdict finding the instrument to be her will the court entered a decree so finding and dismissing the bill, from which the complainants have appealed.

The grounds of contest were the mental incapacity of the testatrix and undue influence of Lena Glass. The testatrix lived alone and Mrs. Glass was a stranger who was called in to care for her at the time of her paralytic stroke and afterward remained with her as long as she lived. The testatrix gradually failed physically until her death. She partially recovered from the effects of the paralysis so that she could move about to some extent and talk with some difficulty. She was frequently at a loss for words but in time recalled them. The day the will was executed Mrs. Glass went to the house of Lyell H. Morris, an attorney of Libertyville, with whom she had been acquainted for two years or more and who had been her attorney, and told him Mrs. Brown wanted to see him on some business, not mentioning the nature of the business. Morris, with his wife and child and Mrs. Glass, drove to Mrs. Brown's, arriving there about two o'clock in the afternoon. Morris did not know Mrs. Brown. He testified that he and his wife went into the front room where Mrs. Brown was sitting, and after some remarks about the weather she said she wanted him to draw some papers for her. Mrs. Glass left the room and Mrs. Morris was going to leave, when Mrs. Brown asked her to stay. Morris asked Mrs. Brown about her property and what kind of a paper she wanted him to

draw, and she told him Mrs. Glass had been there to take care of her for some time and had been good to her, done lots of things for her, and she wanted to give Mrs. Glass her property. He asked her who her heirs were, and she said that she had three nieces who lived in Florida; that they had never done anything for her and Mrs. Glass had, and she wished her property to go to Mrs. Glass. She also told him that she had a conversation a few days before with Dr. Shaffer, because one of her nieces who had been staying in her house had gone to see Dr. Shaffer about having her adjudged insane or having a conservator appointed. She said that Dr. Shaffer told her that she could draw a will and did not have to leave any property to any of her nieces; that he thought she was capable of drawing a will and he would sign as a witness. After further conversation about her property and the will, Morris prepared the will as she directed. She at first wanted him to be executor. He wrote the will in that way, but when he read it over to her she requested him to change the will and put in Mrs. Glass' name instead of his own, and he did so. He asked whom she wanted to witness the will, and she said to have Mrs. Morris and himself and asked if Mrs. Glass could witness it, but he told her she could not, and she then asked him to get a Mr. Beasecker, who lived two or three blocks from there. He took his car, got Beasecker, came back and read the will over to her again in the presence of the witnesses and she executed it. Morris, his wife and Beasecker witnessed it. Mrs. Morris and Beasecker also testified to the execution of the will, agreeing with Morris' testimony.

The appellants insist that the verdict is clearly contrary to the evidence and that the decree should be reversed on that ground, while the appellee contends that the evidence to sustain the will is so clearly sufficient that no other verdict would be justifiable, and each party sets forth in his brief the testimony of witnesses which supports their respective contentions. We shall not follow counsel in their

analysis and discussion of the evidence, for to do so would demonstrate only that it is conflicting and that a verdict in favor of either party would be sustained by the evidence in favor of the successful party in the absence of any of the evidence of the other. Therefore, if there was substantial error in the instructions the decree must be reversed.

In considering the question of undue influence it appears that Lena Glass, a stranger, was employed to take care of the testatrix when she had her stroke of paralysis and lived with her constantly during the remaining seven months of her life. No relative or other person lived with her during that time, except that one of her nieces visited her in her home in January. Mrs. Glass procured her own attorney, who was unknown to the testatrix, to prepare the will, and he with his wife witnessed it, procuring also another witness, a friend of Mrs. Glass, who was only casually acquainted with the testatrix. The question of the existence of a confidential relation between the testatrix, who was sick, feeble and dependent, and Mrs. Glass, upon whom she was dependent for nursing, care and attention and the supply of all her wants, was properly submitted to the jury, and if the jury found that such relation did exist and that Mrs. Glass was the dominant party and the testatrix the dependent, and that Mrs. Glass procured her own attorney to prepare and her own friends to witness the will, by which she received a substantial benefit, the presumption arose that the will was the result of the undue influence of the beneficiary. *Weston* v. *Teufel,* 213 Ill. 291; *Leonard* v. *Burtle,* 226 id. 422; *Yess* v. *Yess,* 255 id. 414; *Gum* v. *Reep,* 275 id. 503; *Snyder* v. *Steele,* 287 id. 159; *Wunderlich* v. *Buerger,* 287 id. 440.

The appellee contends that the testimony of Morris, who prepared and witnessed the will, and of his wife and the other witness, overcomes the presumption of undue influence, and that this was a question of fact on which the verdict of the jury is conclusive. This would no doubt be

true if the issue had been submitted to the jury on instructions free from error. The court erred, however, in giving the following instruction on the question of undue influence:

"You should not presume that any person exercised undue influence on the mind of the testatrix, and unless you believe from all of the evidence, under the instructions of the court, that it has been proven by the preponderance of the evidence, that at the time the testatrix executed the document in question, if she did, and declared it to be her last will and testament, if she did, she was laboring under such lawful restraint that her own will was overpowered, and the instrument expressed not her will at all, but the will of another, you should find undue influence not proven. Even though you may find that the document in question expressed the will of another, still if you also believe from the preponderance of the evidence for the respondents, or the lack of a preponderance for the contestants, that the will also expressed the will of the testatrix, your verdict should be for the respondents and in favor of the validity of the will, on the issue of undue influence."

The instruction is contrary to the law as stated in the cases last cited and is contrary to the twelfth instruction given for the appellants, which said to the jury that "if you believe from all the evidence that the will of Lucinda Brown is made for the chief benefit of one Lena Glass, and if you further believe from the evidence that said Lena Glass was the nurse and housekeeper for said Lucinda Brown and that said Lena Glass caused the said will to be prepared, then a presumption of law arises that the will was procured by the undue influence and improper restraint of said Lena Glass, which presumption must be overcome by other evidence in the case that the execution of said will was the result of the free deliberation and judgment of said Lucinda Brown, and unless you believe from all the evidence that said presumption has been overcome you should find said will not to be the last will and testament

of Lucinda Brown, deceased." If the proof shows that a beneficiary under a will stood in a confidential relation to the testator and caused the will to be prepared, the presumption that it was procured by his undue influence arises, and it was error to tell the jury that they should not presume the exercise of any undue influence.

It was error also to instruct the jury as follows: "Unless you are convinced from the preponderance of the evidence, that on the day the document was executed, if it was, that the testatrix was then mentally incapable and did not then and at that time know who her legal heirs were, and what property she possessed, and in what manner she wished to dispose of it, you should, by your verdict find her mentally competent to make a will." The testatrix's testamentary capacity was established if it appeared that she had mind sufficient to know who were her legal heirs, what her property was and in what manner she wished to dispose of it, but it was not necessary, in order to show the absence of testamentary capacity, to convince the jury, as was required by this instruction, by a preponderance of the evidence, that she was so incapable, mentally, that her want of knowledge extended to all of these things. If because of mental incapacity she did not know any one of these things,—that is, did not know who her heirs were, or did not know and appreciate what property she owned, or did not know and comprehend what disposition she wanted to make of her property,—she was not mentally competent to make a will, and it was error to instruct that she was competent unless all these things were shown by a preponderance of the evidence.

The decree will be reversed and the cause remanded.

*Reversed and remanded.*