Probate Court of Tuscarawas County.

IN RE WILL OF ALBERT MAURER, DECEASED.*

Decided November 10, 1933.

*No motion for new trial or notice of appeal was filed within the statutory time.

*J. E. Patrick,* for proponent.
*Seikel, Seikel & Seikel,* for contestant.

LAMNECK, J.

Albert Maurer, a resident of Dover, Ohio, died on the 13th day of October, 1933, leaving an instrument in writing purporting to be his last will and testament, which was executed on October 7th, 1933. Said decedent left no widow or children, and the only next of kin under the statute of descent and distribution is his mother, also residing at Dover, Ohio. By the terms of said instrument, all of the property of the deceased is given, devised and bequeathed to Mrs. Goldie Marie Horn, also of Dover, with whom the decedent had made his home for several years before his death. The mother objects to the probate of the will on the ground of improper execution and undue influence.

At the hearing on the application to probate, three witnesses were offered by Mrs. Horn, who filed the application for probate, viz, Carl Stucky and Mrs. Mary M. Bimeler, the subscribing witnesses, and Mayme Fritz, the scrivener.

From the evidence of these witnesses, it appears that Mr. Maurer was somewhat advanced in years, his exact age not being shown, and that he had been ill for a week or more before the instrument was executed. Mrs. Horn called the scrivener to write the instrument and also called the subscribing witnesses, who were next door neighbors of Mrs. Horn. The instrument was written in the presence of the decedent, but there is no competent evidence to show whether or not it was read to the deceased after it was writttten. When the subscribing witnesses came into the room the decedent was reclining in bed. Mrs. Horn assisted the decedent to rise in bed and immediately thereafter the scrivener showed him where to sign his name. The decedent signed his name without further assistance, although from the appearance of the signature, it was evidently written with considerable difficulty. Thereupon, the witnesses subscribed their names to the instrument. They did not know the instrument was a purported will, and it was not read to the decedent in their presence. There is an absence of testimony to show that the decedent asked them or desired them to be witnesses.

Under the provisions of Section 10504-3, General Code, a "will shall be signed at the end by the party making it * * *, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature."

This section requires that before a will is properly executed, it must be signed by the testator at the end, and the witnesses must either see the testator sign his name thereto, or hear him acknowledge his signature. They must also sign their names to the instrument in the presence of the testator. In this case, it is clear that the testator signed his name at the end of the instrument in the presence of the witnesses and that the witnesses subscribed their names in the presence of the testator. While the subscribing witnesses did not know the instrument was a will, yet such knowledge under this section is not necessary. (*Underwood* v. *Ruthan*, 101 O. S. 306). From the foregoing it must be concluded that the will was properly executed.

But, before a will can be admitted to probate under the provisions of Section 10504-22, General Code, in addition it must appear to the court that the decedent "was of full age, of sound mind and memory, and not under restraint." In this case, the decedent was over 21 and the subscribing witnesses both testified that he was of sound mind. This leaves the question of undue influence the only one to be further considered.

Undue influence or restraint is such an influence that in some measure destroys the free agency of the testator and prevents the exercise of that discretion which the law requires that a party should possess. (*Creighton* v. *Creighton*, 261 Fed. 333). Misrepresentation and attacks upon natural objects of testator's bounty made to a testator who is sick or aged; urgent solicitation when a testator is at the point of death and nearly exhausted; and suggestions made by one who occupies a dominant position in the relation of trust and confidence have all been held to be elements of undue influence. (Page on Wills, Section 189).

Issues relating to undue influence are generally determined upon circumstantial evidence and inferences drawn from a full presentation of facts which are inconclusive

when taken separately. (*Koch* v. *Meyers*, 7 Ohio App. 306; *Wilder* v. *Taylor*, 87 O. S. 520).

In the case of *Seavey* v. *Glass*, 315 Ill. 611, 146 N. E. 536, it was held that a principal beneficiary under a purported will "who procured her own attorney to prepare a will and her own friends to witness it, and who was testator's nurse and housekeeper at time of execution of will, will be presumed to have unduly influenced testator."

Likewise, in the case of *Chappell* v. *Trent*, 90 Va. 849, 19 S. E. 314, it was held that when an old man away from his next of kin, and in the custody of persons of no kin, is induced to make a will giving to such persons his entire estate, such persons must clearly prove that such will was the free and voluntary act of the testator.

The fact that this instrument was executed six days before the death of the decedent, on his death bed; that the beneficiary, who was the decedent's landlady, assisted the decedent to rise in bed when he signed his name thereto; that the scrivener, and the subscribing witnesses, who were next door neighbors of the beneficiary, were called by the beneficiary; that the decedent disinherited his old mother and only heir without explanation; that the instrument was not read in the presence of the subscribing witnesses and they did not know that it was a will they were attesting; and that the decedent signed it with difficulty without scrutinizing it, are circumstances which, when standing separately, are inconclusive, but when taken together bring the court to the conclusion that the free agency of the testator was destroyed as far as the objects of his bounty were concerned.

It is contended by counsel that the scrivener of the will should have been permitted to testify to the question, "Did you read this will to Mr. Maurer before he signed it?" Section 11494, General Code, provides, insofar as it relates to this case, that an attorney shall not testify "concerning a communication made to him by his client in that relation, or his advice to his client."

This section prevents an attorney who is not a subscribing witness from answering this question, because it could not be answered without the instrument being identified, and in identifying it, an attorney who wrote the instrument

is in fact testifying as to what the decedent communicated to him. (*Collins* v. *Collins*, 110 O. S. 105 at page 133).

A mere scrivener who writes the exact words of the testator, or acts in the capacity of a stenographer, could not be held to occupy the position of an attorney. But when the scrivener uses legal diction in drawing a will and does not use the exact words of the testator, the scrivener and the maker occupy the relation of attorney and client, regardless of whether the scrivener is admitted to practice law or not. It requires a person with some legal knowledge to draw a will properly, and on this theory it has been held in other jurisdictions that statutes such as Section 11494, General Code, include scriveners and conveyancers, unless they act as mere stenographers, as well as general counsel. In the case of *Haddox* v. *Jordan*, 36 O. App. 209, 173 N. E. 11, it was held that a scrivener is not a competent witness.

It must, therefore, be held that when a person consults a scrivener who is not an attorney or a subscribing witness, and the scrivener draws his will using legal phraseology and not the exact words of the maker, the communication of the maker, under Section 11494, General Code, is privileged.

In a proceeding to probate a will, the burden rests on him who seeks to establish its validity, and it must be done by a fair preponderance of the evidence.

There is no preponderance of the evidence in this case to overcome the presumption of undue influence which the testimony discloses. To overcome such presumption, it must be shown that the execution of the will was the result of the free deliberation and judgment of the testator.

The instrument will, therefore, be refused admittance to probate as the last will and testament of Albert Maurer, deceased. Exceptions noted.